1  **WO**

2

3

4

5

6                IN THE UNITED STATES DISTRICT COURT

7                   FOR THE DISTRICT OF ARIZONA

8

9   Alicia Rollins, et al.,                    No.  CV 20-00664-PHX-DWL (ESW)

10                    Plaintiffs,

11  v.                                          **ORDER**

12  Maricopa County, et al.,

13                    Defendants.

14

15          Plaintiff Alicia Rollins ("Plaintiff"), who is represented by counsel, brought this

16  civil rights action pursuant to 42 U.S.C. § 1983 and Arizona state law.  Now pending before

17  the Court are (1) a motion to dismiss filed by Defendants Maricopa County, Phillips, Burke,

18  Schroeder, Kohlmann, Fischer,[1] Saturday, and Aquino (hereinafter, the "County

19  Defendants") (Doc. 11), and (2) a motion to dismiss and joinder filed by Defendants

20  Automotive Personnel Network ("APN") and Oluwaseun (Doc. 13).  For the following

21  reasons, the first motion will be denied and the second motion will be granted in part.

22  I.     <u>First Amended Complaint</u>

23          Plaintiff is suing in her capacity as the personal representative of the Estate of John

24  Eric Rollins, Jr. ("Decedent") and in her individual capacity as Decedent's surviving wife.

25  (Doc. 6 at 1 & ¶ 1.)  Additionally, Plaintiff seeks to bring suit on behalf of "other statutory

26

27  _____

28  [1]      The docket does not reflect that Fischer is a current defendant, and Plaintiff has
    clarified that Fischer was not named as a defendant in the First Amended Complaint (Doc.
    18 at 2), so the Court will take no action on the request to dismiss Fischer.

1  beneficiaries" of Decedent—specifically, Decedent's mother (Kimberly Jackson) and

2  Decedent's minor daughters (J.R.R and N.B.R.).  (*Id.* at 1.)

3       The named Defendants are (1) Maricopa County; (2) Dr. Grant Phillips, Medical

4  Director of Correctional Health Services; (3) PAC-Med; (4) Physician Assistant ("PA")

5  Lindsey Burke (employed by Maricopa County); (5) PA Bonnie Schroeder (employed by

6  Maricopa County); (6) Registered Nurse ("RN") Gayle Kohlmann (employed by Maricopa

7  County); (7) RN Jennifer Contreras (employed by Maricopa County);[2] (8) RN Arlane

8  Aquino (employed by Maricopa County); (9) Nurse "CS564," whose "true name is

9  unknown"; (10) Leslie Saturday (employed by Maricopa County); (11) APN, which does

10 business as APN Staffing and Employment Solutions; and (12) RN Sanya Oluwaseun

11 (employed by APN).  (*Id.* ¶¶ 3-14.)

12      In the First Amended Complaint ("FAC"), Plaintiff asserts three claims: (1) a

13 negligence/medical malpractice/wrongful death claim under Arizona state law against all

14 Defendants (*id.* ¶¶ 112-232); (2) a negligent hiring, training, and supervision claim under

15 Arizona state law against Defendants Phillips, Maricopa County, and APN (*id.* ¶¶ 233-78);

16 and (3) a § 1983 claim based on deliberate indifference to serious medical needs against

17 Defendants Schroeder, Kohlmann, Oluwaseun, CS564, PAC-Med, Burke, and Contreras

18 (*id.* ¶¶ 279-422).[3]

19      The FAC alleges as follows.  While in custody at the Maricopa County Durango

20 Jail, Decedent began experiencing health problems.  (*Id.* ¶ 32.)  On February 23, 2019,

21 Decedent informed Correctional Health Services ("CHS") staff that he was an intravenous

22 drug user, which resulted in his placement in a Clinical Opioid Withdrawal Scale

---

[2]    Although Plaintiff offers various reasons why her claims against Defendant Contreras should not be dismissed (Doc. 18 at 12), the County Defendants clarify in their reply that Defendant Contreras is not a party to the motion to dismiss because she "has not been served." (Doc. 19 at 7-8.) Given this clarification, the Court will not address whether Defendant Contreras is entitled to dismissal at this juncture.

[3]    Although the FAC alludes to "[t]he Fourth and/or Fourteenth Amendment to the United States Constitution" (Doc. 6 ¶ 282), Defendants assert that the parties stipulated to the dismissal of the Fourth Amendment claim. (Doc. 11 at 1.) In response, Plaintiff agrees there are no Fourth Amendment claims pleaded in Count Three and agrees to "strik[e] any reference to the Fourth Amendment." (Doc. 18 at 2.) The Court will therefore dismiss any alleged Fourth Amendment claim in Count Three.

("COWS") program intended to monitor opioid withdrawal symptoms; Decedent complained of nausea, chills, joint discomfort, and loose stool. (*Id.* ¶¶ 33, 35.). The COWS protocol required that Decedent be evaluated twice a day for seven days. (*Id.* ¶ 34.) Although Decedent's vitals were normal on February 27, 2019, two abnormal readings were taken the next day. (*Id.* ¶¶ 36-37.)

On March 1, 2019, CHS staff determined that Decedent was not suffering adverse effects due to opioid withdrawals. (*Id.* ¶ 38.)

On March 4, 2019 at 1:00 a.m., Decedent was taken to the medical unit by detention staff to be evaluated for complaints of persistent chest pain, which began two days earlier. (*Id.* ¶¶ 39-42.) Defendant Aquino ordered an EKG, which showed normal results. (*Id.*) Defendant Schroeder, who reviewed the EKG results, drew the conclusion that Decedent's heart was not the source of his pain. (*Id.* ¶ 44.) Aquino, who told Decedent that his pain might be due to sleeping in a bad position, diagnosed "muscular strain" and prescribed Tylenol and a "big glass of water." (*Id.* ¶¶ 46-49.)

Two days later, Decedent presented to the medical unit with low-grade fever, generalized body aches/pains, and a rapid heartbeat. (*Id.* ¶¶ 50-53.) Decedent was diagnosed with a common cold. (*Id.*) About 90 minutes after going to medical, Decedent's pulse was found to be abnormally high. (*Id.* ¶¶ 55-59.) Although the encounter notes indicate that "Nurse Sonja" was contacted and Decedent was sent to the medical unit, Decedent was not sent to the medical unit and no follow-up occurred. (*Id.*)

On March 8, 2019, at 11:51 a.m., Decedent had his vitals taken by Defendant RN CS564 and had an elevated pulse, but no action was documented. (*Id.* ¶¶ 61-62.)

On March 11, 2019, at 8:12 a.m., Decedent was seen by PAC-Med for complaints of chest pain, fever, chills, and sweats, which had been ongoing for at least four weeks. (*Id.* ¶¶ 62-63.) Decedent exhibited rapid, shallow breathing and reported "pain everywhere." (*Id.*) PAC-Med was unable to take an EKG due to "patient moving" and PAC-Med reported that Decedent would not follow commands of deep breathing and suggested that Decedent was purposefully "panting" on and off and was malingering. (*Id.*

¶¶ 64-66.)  Defendant Burke advised Decedent to sign a "refusal of medical treatment" form, which indicated the reason for leaving the infirmary was costs.  (*Id.* ¶ 67.)

On March 12, 2019, at approximately 7:00 a.m., Decedent sought medical attention because he began coughing up blood and could not walk or feel his legs.  (*Id.* ¶ 68.) Defendant Contreras checked Decedent's vitals and gave him a glass of water and told him to wait in the medical holding cell or hallway.  (*Id.* ¶¶ 69-70.)  Decedent chose to wait in the hallway, but at 8:22 a.m., a detention officer motioned for Decedent to leave the area. (*Id.* ¶¶ 71-72.)  Hours later, several detainees informed detention staff that Decedent needed medical attention, and Decedent was escorted to a control station in a wheelchair.  (*Id.* ¶¶ 75-80.)  Decedent told a Correctional Officer ("CO") he thought he was dying.  (*Id.*)  The CO contacted medical and spoke with CO Martinez to see if Decedent could return to the medical unit, but medical refused to see Decedent.  (*Id.* ¶¶ 81-86.)  Decedent remained in the dayroom waiting to be seen by medical staff.  (*Id.* ¶¶ 87-89.)  A detainee informed a CO that Decedent did not look good, and the CO asked Defendant Contreras to check on Decedent.  (*Id.*)  Contreras briefly looked at Decedent and returned to her work area.  (*Id.*) The same detainee again approached the CO several minutes later and told the CO that Decedent did not appear to be breathing.  (*Id.* ¶¶ 90-94.)  The CO asked Contreras to examine Decedent, but she did not.  (*Id.*)  Nurse Friday responded and found Decedent slumped over in his wheelchair, not breathing, with no pulse, and his eyes rolled back and unresponsive.  (*Id.* ¶ 95.)

Medical staff responded, started CPR, and attempted to use an automated external defibrillator.  (*Id.* ¶¶ 96-98.)  When Decedent did not revive, staff injected Decedent's leg with Narcan, which is typically used to treat suspected opioid overdoses (although Decedent had no symptoms of such an overdose).  (*Id.*)  PA Fischer arrived on the scene and gave orders to inject another dose of Narcan, but staff were unable to inject Decedent due to muscle resistance.  (*Id.* ¶ 99.)  Decedent was pronounced dead at 11:31 a.m.  (*Id.* ¶ 103.)  Decedent's family was notified of his death the same day.  (*Id.* ¶ 104.)

On March 20, 2019, a death certificate was issued for Decedent, which listed the cause of death as "unknown." (*Id.* ¶ 107.) A second death certificate was issued for Decedent on July 2, 2019 and listed the cause of death as "complications of infective endocarditis," an infection of the heart. (*Id.* ¶ 108.)

II.     The County Defendants' Motion to Dismiss

        A.      **Parties' Arguments**

        The County Defendants move under Rule 12(b)(6) to dismiss Counts One and Two of the FAC based on Plaintiff's alleged non-compliance with A.R.S. § 12-821.01(A), which is Arizona's notice of claim statute. (Doc. 11 at 6-10.) As an initial matter, the County Defendants attach four exhibits to their motion—(1) the initial notice of claim Plaintiff filed on December 19, 2019, (2) the amended notice of claim Plaintiff filed on December 26, 2019, (3) the notice of claim against Defendant Contreras that Plaintiff filed on April 23, 2020, and (4) a public records request that Plaintiff submitted to the Maricopa County Medical Examiner on June 20, 2019—and argue the Court may consider these exhibits because they are public records susceptible to judicial notice. (Doc. 11 at 5.) The County Defendants also attach three additional exhibits—(1) the initial death certificate, (2) the amended death certificate, and (3) the autopsy report—to a "Notice of Errata" filed after they filed their reply. (Doc. 21.)[4]

        The County Defendants first argue that, because Decedent died on March 12, 2019, the 180-day period to file a notice of claim expired on September 8, 2019 (meaning all of Plaintiff's notices were untimely). (*Id.* at 6-8.) The County Defendants further argue that Plaintiff isn't entitled to delayed accrual until July 2, 2019, which is the date on which the amended death certificate (which identified the cause of death) was issued, because "[u]pon learning of a loved one's death during a 26-day period of incarceration, a reasonable person would have been on notice to investigate whether the death was caused by fault connected

---

[4]     Plaintiff asks that the death certificates be sealed because they disclose Decedent's date of birth and Social Security number, in violation of Rule 5.2 of the Federal Rules of Civil Procedure. (Doc. 22 at 3.) The Court will grant the request to seal but reminds Plaintiff that, in the future, any request for specific judicial action must be filed in a motion.

1   to the incarceration." (*Id.*) Second, and alternatively, the County Defendants argue that

2   even if Plaintiff is entitled to some period of delay accrual, it ended on June 20, 2019,

3   which is the date on which Plaintiff emailed the medical examiner to ask for Decedent's

4   autopsy report, because that email shows that "Plaintiff  was obviously manifesting an

5   investigation into what caused [Decedent's] death." (*Id.* at 8-10.) Using this date, the

6   County Defendants argue the 180-period ended on December 17, 2019, meaning all of

7   Plaintiff's notices were again untimely. (*Id.*)

8           In response, Plaintiff argues that the date on which Decedent died can't serve as the

9   accrual date because, at that point, she had no information concerning "the facts

10  surrounding [his] death" and thus was "not aware of the cause, source, act, event,

11  instrumentality or condition that caused or contributed to loss," which is the test for accrual.

12  (Doc. 18 at 4-8.) Plaintiff also offers several reasons why June 20, 2019 (*i.e.,* the date on

13  which she requested the autopsy report) shouldn't serve as the accrual date. Specifically,

14  she contends (1) there are no facts in the complaint concerning this request, whether her

15  intent in sending the request was to investigate the cause of death is a disputed factual issue,

16  and such disputed factual issues can't be resolved at the motion-to-dismiss stage; (2) even

17  if the request does serve as proof of investigatory intent, such intent is irrelevant because

18  Arizona law "does not state that accrual is the date on which a reasonable person would be

19  on notice to investigate" and instead "states that accrual relates to when a plaintiff first

20  becomes aware that he or she has a cause of action against the defendant"; (3) she didn't

21  actually receive the requested report until September 25, 2019 (even though it was finalized

22  on June 6, 2019) and Maricopa County's "intentional failure" to release the report in a

23  timely manner constitutes "fraudulent concealment . . . [that] tolls the statute of

24  limitations"; and (4) tolling based on fraudulent concealment is also available because "a

25  Maricopa County Sheriff's Deputy . . . misled the family into believing that [Decedent]

26  never sought medical treatment while in . . . custody." (*Id.* at 7-13.)[5]

27  _____

28  [5]     Plaintiff also identifies reasons why her April 2020 notice of claim against
    Defendant Contreras should be considered timely (*id.* at 12), but as discussed in footnote
    two above, Defendant Contreras did not join in the motion to dismiss.

1   B.    **Analysis**

2       As an initial matter, both sides identify Rule 12(b)(6) as the rule governing the

3   County Defendants' motion.  Although some courts have suggested that other provisions

4   of Rule 12(b) apply in this circumstance,[6] the Court will apply Rule 12(b)(6) in light of the

5   parties' agreement.

6       "When ruling on a Rule 12(b)(6) motion to dismiss, if a district court considers

7   evidence outside the pleadings, it must normally convert the 12(b)(6) motion into a Rule

8   56 motion for summary judgment, and it must give the nonmoving party an opportunity to

9   respond."  *United States v. Ritchie*, 342 F.3d 903, 907-08 (9th Cir. 2003).  However, a

10  district court need not convert a Rule 12(b)(6) motion into a summary judgment motion

11  where the proffered materials are "documents incorporated by reference in the complaint"

12  or "matters of judicial notice."  *Id.* at 908.  Here, the FAC refers to Plaintiff's notices of

13  claim (Doc. 6 ¶ 15) and to the initial and amended death certificates (*id.* ¶¶ 106-110).  Thus,

14  the Court will consider those materials—which were attached as Exhibits 1-3 to the County

15  Defendants' motion and Exhibits 1-2 to the County Defendants' notice of errata—when

16  ruling on the County Defendants' motion.

17      In contrast, the Court will not consider the public records request that Plaintiff sent

18  to Maricopa County on June 20, 2019.  That request is not referenced in the FAC and the

19  County Defendants are not merely seeking to show that Plaintiff submitted a request.

20  Instead, they seek to draw certain factual inferences about why Plaintiff submitted it.  This

21  is improper.  *Cf. Rhodes v. Gordon*, 2013 WL 3780378, *5 (C.D. Cal. 2013) ("With respect

22  to plaintiff's screened-out administrative appeals and plaintiff's legal mail logs from Kern

23  Valley State Prison, even assuming that such records are matters of public record, the Court

24  cannot take judic[ial] notice under Rule 201 of any further inferences regarding the

25  ───────────────

26  [6]     *See generally Udd v. City of Phoenix*, 2018 WL 6727267, *5 n.2 (D. Ariz. 2018) (noting that "there is disagreement on th[e] question" of which portion of Rule 12(b) governs a motion to dismiss based on non-compliance with Arizona's notice of claim

27  statute, with some courts applying Rule 12(b)(6), other courts applying Rule 12(b)(5), and still other courts reasoning that "the notice of claim statute constitutes [a] failure to exhaust

28  non-judicial remedies . . . which is subject to an unenumerated Rule 12(b) motion to dismiss") (citations and internal quotation marks omitted).

1   documents . . . ."); *Kadiyan v. Medtronic*, 2011 WL 13142145, *5 n.62 (C.D. Cal. 2011)

2   ("Because it is a part of the public record of an administrative body, the court takes judicial

3   notice of the complaint.  The court does not take judicial notice of the truth of the

4   allegations in the . . . complaint, or the inferences that could be drawn from them,

5   however.").[7]

6        On the merits, Arizona's notice of claim statute provides that persons who have

7   claims against "a public entity or public employee" must file a notice of claim "within one

8   hundred eighty days after the cause of action accrues." A.R.S. § 12-821.01(A).  "[A] cause

9   of action accrues when the damaged party realizes he or she has been damaged and knows

10  or reasonably should know the cause, source, act, event, instrumentality or condition that

11  caused or contributed to the damage."  *Id*. § 12-821.01(B).  Plaintiff argues her claims

12  didn't accrue on March 12, 2019 because she had no information at that time about the

13  circumstances surrounding her husband's death (and, indeed, didn't even learn the cause

14  of death until much later).

15       The Court agrees with Plaintiff.  Under Arizona law, accrual occurs at the "point

16  Plaintiff's knowledge, understanding, and acceptance in the aggregate provided sufficient

17  facts to constitute a cause of action."  *Walk v. Ring*, 44 P.3d 990, 996 (Ariz. 2002)

18  (quotation omitted).  A plaintiff must comprehend not only a "what" but also a "who," and

19  there must be "a reason to connect the 'what' to a particular 'who' in such a way that a

20  reasonable person would be on notice to investigate whether the injury might result from

21  fault."  *Id.*  Here, all Plaintiff knew on March 12, 2019 was that her husband had died from

22  unknown causes while in custody.  It is difficult to understand how that isolated data point

23  could be enough to reasonably place Plaintiff on notice of her potential medical malpractice

24  and negligent training/supervision claims against a host of specific medical providers.  *See,*

25  *e.g., id.* at 997 ("To trigger the statute of limitations, something more is required than the

26  mere knowledge that one has suffered an adverse result while under the care of a

27  _____

28  [7]     Although Plaintiff discussed the June 20, 2019 email in her response to the motion
    to dismiss, the presence of this discussion does not change the judicial-notice analysis.
    *Broam v. Bogan*, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003).

professional fiduciary."); *Aranda v. Yuma Cty.*, 2008 WL 11338492, *2 (D. Ariz. 2008) ("Defendant City of Yuma urges this Court to adopt December 18, 2006, the date of Mr. Aranda's death, as the date upon which this claim accrued.  However, there is no indication from the record that Plaintiffs on that date had that degree of knowledge necessary to trigger accrual, apart from the knowledge that Mr. Aranda had died while in custody.  As Plaintiffs correctly state, they had access to no documents, statements, or any other information concerning the circumstances of Mr. Aranda's death.").

The decision in *Little v. State*, 240 P.3d 861 (Ariz. Ct. App. 2010), on which the County Defendants place heavy reliance, does not compel a different result.  There, a college basketball player died in September 2005 after collapsing in the team's training room.  *Id.* at 863.  Afterward, the decedent's father authorized a local television reporter to obtain his daughter's medical records and investigate the circumstances surrounding her death.  *Id.*  In June 2007, after receiving the medical records and consulting with several doctors, the reporter (on behalf of the father) filed a complaint with the state medical board accusing the team's doctor of negligence.  *Id.*  In February 2008, the medical board ruled that the doctor had engaged in "unprofessional conduct."  *Id.*  Finally, in May 2008, the father filed a notice of claim.  *Id.*  The father argued the notice was timely because his claim didn't accrue until the medical board issued its ruling in February 2008 but the Arizona Court of Appeals disagreed, holding that the notice was untimely because the father's "cause of action accrued as a matter of law no later than the date the Board complaint was filed" in June 2007.  *Id.* at 864.  The court deemed the filing of the complaint a "significant step" for accrual purposes because it "expressly identified the actors and events that 'caused or contributed to [the] damage.'"  *Id.*

If *Little*'s holding were that the father's claim accrued at the moment of his daughter's death, the County Defendants' position might have more force.  But that was not *Little*'s holding.  Instead, the *Little* court suggested the father's claim accrued a year and a half *after* his daughter's death, once his post-death investigation generated enough evidence to reasonably place him on notice that negligent conduct might be the cause of

1  death.  *Id.* at 470 ("*Walk* explains that 'the core question' as to when a cause of action

2  accrues is when a 'reasonable person would have been on notice' to investigate whether

3  negligent conduct may have caused her injury; it does not provide or suggest that a plaintiff

4  first must receive an expert medical opinion stating that malpractice has occurred.").  That

5  is essentially Plaintiff's position here, too—she contends she received sufficient notice no

6  earlier than July 2, 2019, which is when the amended death certificate first disclosed the

7  actual cause of her husband's death.

8       The County Defendants' reliance on *Humphrey v. State*, 466 P.3d 368 (Ariz. Ct.

9  App. 2020), fails for similar reasons.  In May 2008, Humphrey's wife died in a car accident.

10  *Id.* at 372.  In November 2008, an attorney filed a notice of claim on Humphrey's behalf,

11  which alleged that the accident was "due to the State of Arizona's negligent maintenance

12  of the highway, median; and failure to provide a guard barrier."  *Id.* at 372.  However, this

13  notice "was legally deficient because it did not state a specific amount for which the claim

14  could be settled."  *Id.* at 374.  About two years later, in October 2010, another notice of

15  claim was filed on Humphrey's behalf.  *Id.*  This notice "asserted the same basis for liability

16  as the 2008 notice" and also "set forth a specific amount for which the claims could be

17  settled."  *Id.*  Humphrey argued his October 2010 notice was timely because "the need for

18  a median barrier could not be known until after an expert witness had reviewed the prior

19  crash history" but the Arizona Court of Appeals disagreed, holding that the earlier notice

20  established "that Humphrey knew in 2008 he had been injured because the State had not

21  installed a median barrier" and that Humphrey's "repeated attempts to distance himself

22  from the relevance of the 2008 notice to the accrual issue" were unavailing.  *Id.* at 375.

23  Here, in contrast, Plaintiff is not attempting to distance herself from a previous notice of

24  claim that alleged the same facts on which her operative notice is based.

25       Finally, because the June 20, 2019 email is not properly before the Court at this

26  time, it is unnecessary to address the County Defendants' alternative argument that it

27  served as the triggering event for accrual purposes.

28       …

- 10 -

1

2

III.    APN's and Oluwaseun's Motion To Dismiss

A.    **Parties' Arguments**

3    Defendants APN and Oluwaseun have joined in the County Defendants' dismissal

4 arguments.  (Doc. 13 at 2-5.)[8]  This joinder fails for the reasons discussed above and for

5 the additional reason that APN and Oluwaseun haven't cited any Arizona cases

6 establishing why they should be considered public entities or public employees under

7 Arizona law.  *Pivotal Colorado II, L.L.C. v. Arizona Pub. Safety Pers. Ret. Sys.*, 322 P.3d

8 186, 190 (Ariz. Ct. App. 2014) ("It is the bundle of statutes that create and regulate an

9 entity that makes it a public entity for purposes of the notice of claim and corresponding

10 limitations statutes.").  Indeed, APN doesn't dispute the FAC's characterization of it as a

11 private company that contracted with Maricopa County to provide temporary/contract

12 staffing services.  (Doc. 13 at 2, citing Doc. 6 ¶ 28.)

13    APN also moves for dismissal under Rule 12(b)(6) on that ground that it is being

14 sued under a vicarious liability theory but, because "Oluwaseun would be considered a lent

15 employee of the County," only "the County, not APN, may be held vicariously liable for

16 any alleged negligent conduct by Oluwaseun."  (Doc. 13 at 5-6.)

17    In response, Plaintiff argues that Arizona law "[i]n some instances" allows both "a

18 general employer and a special employer [to] be vicariously liable for an injury," that

19 liability turns on a fact-intensive inquiry addressing "whether the general employer, the

20 special employer, or both actually controlled or had the right to control the injury-causing

21 activity of the borrowed employee," and here "additional discovery is necessary in order

22 to ascertain what percentage of liability should be apportioned to the respective defendants

23 thus, creating a genuine issue of material fact."  (Doc. 17 at 3-4.)

24

25

26

27

28

---

[8]    In support of their joinder, APN and Oluwaseun improperly proffer certain "facts" that do not appear in the FAC.  (Doc. 20 at 4 ["As the decedent's wife, Plaintiff likely knew [Decedent] was a 26-year-old male without any underlying health conditions prior to his detainment.  Although he was an admitted drug user, there should have been no illegal drugs in his system since he had been in custody at the Durango Jail for approximately three weeks."].)  The Court obviously cannot consider these "facts" for purposes of a motion to dismiss under Rule 12(b)(6).

B. **Legal Standard**

"[T]o survive a motion to dismiss, a party must allege 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *In re Fitness Holdings Int'l, Inc.*, 714 F.3d 1141, 1144 (9th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (quoting *Iqbal*, 556 U.S. at 678). "[A]ll well-pleaded allegations of material fact in the complaint are accepted as true and are construed in the light most favorable to the non-moving party." *Id*. at 1144-45 (citation omitted). However, the court need not accept legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 679-80. The court also may dismiss due to "a lack of a cognizable legal theory." *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1065 (9th Cir. 2015) (citation omitted).

C. **Analysis**

In Arizona, "[t]he doctrine of respondeat superior generally holds an employer vicariously liable for the negligent work-related actions of its employees." *Tarron v. Bowen Mach. & Fabricating, Inc.*, 235 P.3d 1030, 1033 (Ariz. 2010). However, "[t]he borrowed servant doctrine allows an employer who loans its employees to another to escape vicarious liability for the employees' negligent acts under certain circumstances." *Id.* Specifically, a "borrowed servant" relationship arises when:

> [A]n employer sends one of its employees to do some work for a separate business. The employer usually is referred to as the "general employer" in the law of agency. The separate business often is called the "borrowing" or "special" employer. The transfer frequently is pursuant to a contract between the general and borrowing employers which calls for compensating the general employer. . . . The general employer has no intention of severing its employment relationship with its employee. Instead, the loaned employee is subject to the instructions of the borrowing employer.

*Id.* (citation omitted).

"To determine whether a general employer remains vicariously liable for the negligent act of an employee it has contracted out to another, courts typically examine whether the general employer either exercised actual control over the acts giving rise to the

injury or retained a right to control those acts." *Id.* "In some circumstances, the general employer and special employer may both be liable because each had actual control of, or the right to control, the employee's actions." *Id.* "If the evidence is such that reasonable persons might well come to different conclusions as to who had the control or right of control at the time of the accident, the issue should be submitted to the jury." *Id.* at 1034 (quotation omitted). There is "a presumption that the general employer remains vicariously responsible for the employees' actions." *Id.* at 1035. "[C]ontract language does not always determine employment status." *Id.* at 1034. Rather, the factfinder must determine the objective nature of the relationship by considering several factors. *Id.* at 1035-36.

Given this backdrop, Plaintiff is correct that might be possible, under the right set of facts, to hold APN vicariously liable for negligent conduct committed by Oluwaseun, even though Oluwaseun was acting as a contractor for Maricopa County at the time of the conduct. As noted, Arizona law authorizes vicarious liability when "the general employer either exercised actual control over the acts giving rise to the injury or retained a right to control those acts." *Tarron*, 235 P.3d at 1033. Nevertheless, the problem here is that the FAC doesn't allege any *facts* that suggest *Tarron*'s test for vicarious liability could be satisfied as to APN. The few allegations in the FAC pertaining to APN and Oluwaseun are as follows:

▪ APN is an Arizona limited liability corporation that "at all relevant times employed . . . Oluwaseun, a registered nurse contracted to work for Maricopa County." (Doc. 6 ¶ 13.)

▪ Maricopa County "contracted with . . . APN for temporary/contract employee staffing services to provide medical treatment and health services to inmates." (*Id.* ¶ 28.)

▪ Maricopa County "is responsible for the screening, hiring, training, supervising, and retaining of all employees and/or contractors who are responsible for . . . medical treatment . . . of inmates, and pre-trial detainees in the custody of the Maricopa County Sheriff's Office." (*Id.* ¶ 29.)

▪ On March 6, 2019, Oluwaseun was informed that Decedent had concerning vitals

but did not examine Decedent and did not follow-up to ensure that Decedent was seen by another member of medical staff.  (*Id.* ¶¶ 171-175.)

If anything, these facts suggest that APN couldn't be held vicariously liable under *Tarron*—they suggest that Maricopa County, not APN, bore sole responsibility for training Oluwaseun, supervising Oluwaseun, and otherwise overseeing Oluwaseun's provision of medical treatment to inmates.  (Doc. 6 ¶ 29.)  Thus, Plaintiff's contention that "genuine issue[s] of material fact" preclude dismissal (Doc. 17 at 3-4) misses the mark.  It was incumbent upon Plaintiff to "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *In re Fitness Holdings,* 714 F.3d at 1144.  A plaintiff cannot plead facts that, if accepted, would conclusively negate liability, then argue she is entitled to engage in discovery so she can potentially disprove her own allegations.

D.     **Leave To Amend**

In her response to APN's motion, Plaintiff states that "[a]lternatively, if the court deems that additional facts are necessary to cure a defect in the First Amended Complaint, Plaintiff seeks leave of court to amend."  (Doc. 17 at 5.)

This request will be granted.  Rule 15(a)(2) provides that "the court should freely give leave [to amend pleadings] when justice so requires."  "[T]his policy is to be applied with extreme liberality."  *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001).  Thus, leave to amend should be denied only if the proposed amendment would prejudice the opposing party, is sought in bad faith, would unduly delay the litigation, or is futile.  *Amerisource Bergen Corp. v. Dialysis W., Inc.*, 465 F.3d 946, 951 (9th Cir. 2006); *Jackson v. Bank of Haw.*, 902 F.2d 1385, 1397 (9th Cir. 1990).  Here, it appears Plaintiff believes she could allege additional facts to support her claim that APN may be held vicariously liable for Oluwaseun's conduct and APN has not argued that such an amendment attempt would be prejudicial, sought in bad faith, unduly time-consuming, or futile.

…

Accordingly, **IT IS ORDERED** that:

(1)    The reference to the Magistrate Judge is **withdrawn** as to the County Defendants' motion to dismiss (Doc. 11) and Defendants APN's and Oluwaseun's joinder and motion (Doc. 13).

(2)    The County Defendants' motion to dismiss (Doc. 11) is **denied**.

(3)    Defendants APN's and Oluwaseun's joinder and motion (Doc. 13) is **granted in part and denied in part**.

(4)    The Clerk of the Court must **seal** the Exhibits to the County Defendants' notice of errata (Doc. 21-1) because those exhibits do not comply with Rule 5.2 of the Federal Rules of Civil Procedure.

(5)    The Fourth Amendment claim within Count Three of the FAC, to the extent such a claim exists, is **dismissed** without prejudice.

(6)    Plaintiff may, within 14 days of this order, file and serve a second amended complaint ("SAC").  The SAC may include only the changes from the FAC that were authorized in this order.  If Plaintiff chooses to file a SAC, she must also file, as an exhibit, a redlined version that indicates how the SAC differs from the FAC.

Dated this 14th day of October, 2020.

Dominic W. Lanza
United States District Judge